Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin E. Aspen | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 78 C 1704 | **DATE** | 1/14/2002 |
| **CASE TITLE** | Johnson vs. Brelje | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Report and Recommendation to Hon. Marvin E. Aspen recommending that Movant Yoder's Motion to Amend Class be DENIED is submitted herewith. Specific written objections Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. Lorentzen v. Anderson Pest Control, 64 F.3d 327, 330 (7th Cir. 1995). All matters relating to the referral of this matter having been concluded, the referral is closed and the case is returned to the assigned judge.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | JAN 1 8 2002 | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | 02 JAN 17 PM 3:02 | | 10 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | FILED-ED 10 | 1/14/2002 date mailed notice | |
| | courtroom tw deputy's initials | | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

JAN 1 8 2002

| | |
|---|---|
| WILLIAM JOHNSON ex. rel<br>RICHARD JOHNSON,<br>                    Plaintiff,<br><br>v.<br><br>TERRY B. BRELJE,<br>                    Defendant. | Cause No. 78 C 1704<br><br>Judge Marvin E. Aspen<br>Magistrate Judge Geraldine Soat Brown |

To: The Honorable Marvin E. Aspen
United States District Court Judge

## REPORT AND RECOMMENDATION

Geraldine Soat Brown, United States Magistrate Judge

    The District Judge has referred Rodney Yoder's Motion to Amend Class [Dkt # 1] to the Magistrate Judge for report and recommendation. [Dkt #2.] After receiving briefs and hearing oral argument from counsel for the movant and for the defendants, this Court respectfully recommends that the Motion to Amend Class be DENIED for the following reasons.

## BACKGROUND

The underlying action.

    This action was filed in 1978 as a proposed class action alleging violations of certain constitutional rights by the Illinois Department of Mental Health and Developmental Disabilities. (Subsequently, that Department was abolished and its services were assumed by the Illinois

1



Department of Human Services.) The District Court certified a class for the claim relevant to this motion described as follows:

> [A]ll persons who are/or will be found to be unfit to stand trial because of a finding of [sic] to be in need of mental treatment or by operation of the Illinois Code of Corrections after being found not fit to stand trial by an Illinois court and solely because of said finding are transferred [to] Chester Mental Health Center.

*Johnson v. Brelje*, 521 F. Supp. 723, 725, n.1 (N.D. Ill. 1981)(Aspen, J.).[1] In 1981, the Court granted the plaintiffs' motion for summary judgment with respect to certain of the claims, including the claim that the plaintiffs' due process rights had been infringed by the fact that the plaintiffs had been permitted only twenty-five hours of outdoor activities in a year without any justification by the defendants for that limitation. *Id.* at 731. The Court directed the parties to present a supplemental order setting forth practical procedures to implement the court's rulings. *Id.* at 733. The Supplemental Order (the "1981 Order") entered by the Court included a policy that "residents" of Chester Mental Health Center ("Chester") would have at least five opportunities to be outside per week, subject to certain conditions. *Johnson v. Brelje*, 525 F. Supp. 183, 184 (N.D. Ill. 1981)(Aspen, J.) With the exception of an issue relating to attorneys' fees, the District Court's decision was affirmed by the Seventh Circuit. *Johnson v. Brelje*, 701 F.2d 1201 (7th Cir.1983).

In 1992, the Seventh Circuit held that a subsequent amendment to the Illinois Code of Criminal Procedure eliminated the basis for the holding in this case that persons found unfit to stand trial had a state-created liberty interest in being confined in the least restrictive environment. *Maust*

---

[1] The plaintiff had sought a broader class of persons not limited to the Chester State Mental Hospital facility, consisting of persons found unfit to stand trial and in need of mental treatment who are "hospitalized in facilities of the Illinois Department of Mental Health and Developmental Disabilities." *Johnson v. Brelje*, 482 F. Supp. 121, 123 (N.D. Ill. 1979)(Aspen, J.).

*v. Headley*, 959 F. 2d 644, 648 (7th Cir. 1992). That decision did not affect the holding in this case regarding outdoor activity.

Yoder's Motion for Rule to Show Cause.

In November 1999, movant Rodney Yoder ("Yoder") filed a *pro se* motion entitled "Motion for Rule to Show Cause Why Stephen L. Hardy Should Not Be Held in Contempt of Court," alleging that Stephen Hardy, the facility director of Chester, had violated the 1981 Order. In that motion, Yoder alleged that he had been confined to Chester since June 26, 1991, and that he had been deprived of outdoor recreation for twelve months. This Court recommended denial of the Motion for Rule to Show Cause because it had never been properly served on the defendants, but recommended that Yoder's subsequent motion for appointment of counsel be granted, and the District Judge appointed attorney Mark Heyrman to represent Yoder.

Although Yoder's Motion for Rule to Show Cause states that he is a member of the plaintiff class (Mot. Rule to Show Cause ¶ 2), in fact Yoder is not a member of the plaintiff class that was certified in this case. Yoder is confined to Chester pursuant to the Illinois Mental Health and Disabilities Code, 405 Ill. Comp. Stat. § 5/1-100, *et seq.* (2001), not by reason of a finding that he is unfit to stand trial. (Mot. Am. Class ¶ 7.) In other words, Yoder is confined as a result of a civil commitment order, not as a result of proceedings in connection with a criminal charge against him. Yoder, by his appointed counsel, brought the present motion to expand the class certified as plaintiffs in this case and therefore having standing to enforce the 1981 Order. Initially Yoder moved that the class should be expanded to include all persons who are committed to any state facility of the Department of Human Services. (Mot. Am. Class at 1.) In his Memorandum of Law, and at oral

argument, Yoder limited the proposed expanded class to persons confined at Chester. At oral argument on the motion, Yoder's counsel also acknowledged that the motion seeks to have the 1981 Order apply only prospectively, not retroactively, to the expanded class. The Department of Human Services (the "Department") strongly opposes expanding the class in any way.

The Department's policy at Chester and Yoder's motion.

Yoder states (and the Department does not contest) that the Department has authority to determine who is confined at Chester and has chosen to confine three categories of persons there:

> (a) criminal defendants determined to be unfit to stand trial pursuant to 725 Ill. Comp. Stat. § 5/104-10, et seq.
>
> (b) persons acquitted of criminal charges by reason of insanity and committed pursuant to 730 Ill. Comp. Stat. § 5/5-2-4; and
>
> (c) certain persons (like Yoder) who have been involuntarily committed under the Mental Health and Developmental Disabilities Code, 405 Ill. Comp. Stat. § 5/1-100, *et seq.*

(Mem. Law in Supp. Mot. Am. Class at 2-3.)

Yoder alleges that the Department developed a policy for Chester residents providing, in essence, that residents be given at least five opportunities to be outside each week, subject to certain exceptions, for example, when the outside temperature is below 40 degrees or above 90 degrees, or when the area is unsafe due to inclement weather, physical plant conditions or activities, or unplanned and unexpected personnel shortages. (Mot. Am. Class at ¶ 6.) In addition, an individual resident may be denied the opportunity if his behavior or clinical condition makes his participation unsafe. (*Id.*) The policy described by Yoder is substantially the policy set out in the 1981 Order. *See* 525 F. Supp. at 184. Yoder further alleges that, notwithstanding this policy, he was denied all

4

outdoor recreation from late 1998 to April 2000, and that no professional judgment was exercised in denying him outdoor recreation for that prolonged period. (Mot. Am. Class. at ¶¶8 and 11.) He argues that, although the 1981 Order entered in this case only requires that the policy be applied to the certified class (those confined as result of a finding that they are unfit to stand trial), as a person confined because of a civil commitment, Yoder has at least the same rights as the certified class to be treated in the least restrictive environment, and, therefore, the class (and 1981 Order) should be expanded to include himself and other persons confined at Chester. (*Id.* at ¶¶ 6, 12, and 16.)

The Department's response.

The Department admits that Yoder was deprived of outdoor recreation except in an area immediately outside his housing module, but states that it was for nine and a half months, not the fourteen months that Yoder claims, during a period when a fence was being constructed and security was compromised. (Defs.' Am. Mem. Law in Opp'n at 3, and attached Aff. of Robert Poole.) The Department states that an individualized decision was made as to whether each resident posed a flight risk, and that in Yoder's case the decision was made by a team of Chester staff based on past experiences with him and the Department's understanding that 25 individuals or agencies are to be notified if Yoder escapes or is released, due to death threats that Yoder has made. (*Id.*) Thus, the Department argues, Yoder's claims are not typical of the proposed class, if the argument for the proposed class is that residents of Chester have been denied individualized determinations before being deprived of outdoor recreation.

The Department further states that, even if, *arguendo*, the class were expanded to include all Chester residents, the Department would not have violated any provision of the 1981 Order because

5

Yoder received an individualized determination that the conditions of the physical plant and his behavior or clinical condition justified restricting him. (*Id.* at 5-6.) Finally, the Department argues that the class should not be amended twenty years after the consent decree. (*Id.* at 6-8.) Yoder disputes the Department's claim that an individualized professional determination was made in his case.

## THE PARTIES' ARGUMENTS

Yoder acknowledges that amending a twenty-year-old order to expand the class covered by the order is unusual, and, in fact Yoder has cited no precedent for doing so. However, he argues that, for reasons particular to this situation, this approach is a more efficient way to achieve what is, in Yoder's view, a foregone conclusion.

Yoder's argument, in essence, is as follows. Federal courts have recognized, in this case and others, that persons confined because they have been found unfit to stand trial on criminal charges have a due process right to have restrictions on their personal liberty made by individualized professional judgment. There are no comparable decisions holding that civilly committed persons have such a right because implicit in the decisions relating to persons unfit to stand trial is an assumption that such a right is generally acknowledged to apply to civilly committed defendants. Litigation was necessary to establish that right as to persons unfit to stand criminal trial because they are a "harder case." Thus, since the right has been expressly determined to exist as to the arguably more difficult persons–those whose commitment grows out of their status as criminal defendants– there is no reason for not similarly expressly decreeing that right to exist for civilly committed persons. In fact, Yoder argues, the Department's policy for Chester, which applies to all residents

6

regardless of the reason for their confinement, tacitly acknowledges that there is no relevant distinction among those residents for this purpose. Thus, Yoder argues, to require Yoder to file a separate lawsuit to establish what is essentially a foregone conclusion would be inefficient for the court as well as the parties. That lawsuit would most likely be consolidated as related to the present case in any event. Thus, Yoder further argues, there is no harm to the Department and much benefit to the members of the proposed expanded class simply to hold as a matter of law that all Chester residents have the same right to an individualized professional judgment as those confined because they are unfit to stand trial, and to make all Chester residents part of the plaintiff class protected by the 1981 Order so that they can efficiently enforce that right.

The Department strongly objects to Yoder's proposal. While the Department does not expressly dispute the right of civilly committed persons to individualized professional judgment, it is also not prepared to concede the point as a matter of law. The Department argues that if such a decision is to be made by a court, it should be made in the context of a separate complaint brought by a person with standing to raise the claim who alleges that he or she has been deprived of the claimed right. In that way, the Department argues, a complete factual record about how recreation is determined for persons civilly committed can be made as the basis for any judgment and order, as a complete factual record was made for the decision and 1981 Order related to persons unfit to stand trial.

The Department makes the further point that the expanded class proposed by Yoder, *i.e.*, all residents of Chester, also includes persons found not guilty of a criminal charge by reason of insanity, who are not part of the previously certified class and therefore, like Yoder, not covered by

the current 1981 Order. The Department argues that there are factual issues relating to the treatment of such persons that should be determined before any order is entered. The Department argues that Yoder is not a representative of such persons.

## DISCUSSION

Civilly committed persons and restrictions on personal freedom.

Yoder does not claim that he has a constitutional right to a particular amount of outdoor activity or that his outdoor activity cannot be curtailed for any reason. Rather he argues that he has the same right to have restrictions on his outdoor activity determined pursuant to an individualized professional judgment that this Court and the Seventh Circuit's opinion in this case recognized applied to restrictions on outdoor activity for persons held unfit to stand trial. *Johnson*, 701 F.2d at 1209. However, it appears that no case has specifically litigated the process to which civilly committed persons are entitled in the determination of limitations on their outdoor activity. Like this case, the cases that have dealt with similar issues of restrictions on activities have arisen in the context of persons who are committed pursuant to criminal processes as unfit to stand trial on criminal charges or found not guilty by reason of insanity. *See, e.g., Barichello v. McDonald*, 98 F.3d 948 (7th Cir. 1996)("grounds" or "off-grounds" passes for persons unfit to stand trial); *C.J. v. Department of Mental Health and Developmental Disabilities*, 693 N. E. 2d 1209 (Ill. App. 1998) (due process rights of persons not guilty by reason of insanity to unsupervised on-grounds privileges).

There is some support for Yoder's argument that these cases contain an implicit assumption that the interest of civilly committed persons in personal liberty and their rights to protect that liberty

are at least as strong as those of persons committed as a result of criminal processes. For example, in holding that those unfit to stand trial do not have a right to be treated the same as those civilly committed, the court in *Barichello* comments that "we do not doubt the state could justify many treatment distinctions" between the civilly committed and the criminally committed. 98 F.3d at 952. The implication of this comment is that those treatment distinctions would recognize fewer restrictions on the civilly committed.

However, it is a large leap from an implication in one or more cases to a holding as a matter of law. For one thing, the category of "civilly committed persons" includes persons who are confined for a variety of reasons. For example, the process by which "sexually dangerous persons" are determined to require confinement is, by statute, civil in nature although the process originates in a criminal charge. *See* Sexually Dangerous Persons Act, 725 Ill. Comp. Stat. 205/3, 205/3.01. As the Department points out, the 1981 Order was the result of findings made on a complete factual record that included not only the establishment of the right as a matter of law, but additional findings of fact that the right had been violated and that an injunction was necessary as a remedy. That record has not been made here.

Amending the class.

Federal Rule of Civil Procedure 23(c)(1) provides that an order certifying a class "may be altered or amended before the decision on the merits." It is indisputable that the decision on the merits of this case was made, and affirmed, twenty years ago. However, Yoder argues that courts have allowed post-judgment amendments to classes certified under Fed. R. Civ. P. ("Rule") 23(b)(2) in unusual circumstances where an amendment would not prejudice the defendant. (Yoder's Mem.

Law in Supp. at 5.)

In *Jimenez v. Weinberger*, 523 F.2d 689, 697 (7th Cir. 1975), cited by Yoder, the Seventh Circuit observed that subparagraph 23(c)(1) is applicable to all class actions, and that "the explicit permission to alter or amend a certification order before decision on the merits plainly implies disapproval of such alteration or amendment thereafter." However, the Seventh Circuit went on to discuss the distinction between class actions pursuant to subparagraph (b)(3), as to which subparagraph (c)(2) requires notice so that members may opt-out before a binding judgment is made, and class actions pursuant to subparagraphs (b)(1) and (b)(2) for injunctive and declaratory relief, as to which subparagraph (c)(3) applies, permitting "the entry of a single order determining both the merits and the identity of the class." *Id.* at 698. In that case, the Seventh Circuit affirmed the district court's decision on remand, after reversal of an erroneous decision on the merits without a class certification, certifying a class and ordering the Secretary of Health Education and Welfare to grant all the members of the class, not only the named plaintiffs, an opportunity to establish their right to Social Security benefits. Relevant to Yoder's motion is the Seventh Circuit's practical consideration of what would happen if the court reversed the class certification. The court noted that, given the United States Supreme Court's determination of the right to benefits, if the district court's certification of a class were not affirmed, a new class action would be filed immediately by a different plaintiff, as to which the Secretary could advance no defense that he could not have raised in the pending case. *Id.* at 700-01. The court stated,

> In sum, although we recognize the salutory policy considerations underlying subparagraph (c)(1) and the clear admonition by the Supreme Court to enforce the rule in cases maintained under subparagraph (b)(3) and, no doubt, in most cases maintained under (b)(1) or (b)(2), as well, we are persuaded that the rule

10

contemplates some flexibility in its enforcement and that in this case the district court class determination, although untimely, was not erroneous.

*Id.* at 702.

An important distinction between *Jimenez* and Yoder's motion is that the right of the class members ultimately certified in *Jimenez* to the relief ordered was fully litigated and determined in favor of the class members when the district court entered its order. There was no argument that the Secretary could raise that had not been available then. Yoder's motion *assumes* that litigation of the issue of the rights of all residents of Chester to outdoor exercise would have the same result as the decision that was made in this case in 1981 as to persons unfit to stand trial. The Department denies that assumption, and states that there may be factual issues to consider regarding the class that Yoder now seeks, which includes persons found not guilty by reason of insanity. The Department argues that it is at least entitled to a factual hearing on that issue.

Yoder also cites *Phan v. Friedes*, 91 F.R.D. 408 (N.D. Ill. 1981)(Grady, J.), in which the district judge had certified a class under Rule 23(b)(2) upon granting the plaintiff's motion for summary judgment. An appeal was taken from that order, which was ultimately dismissed for want of prosecution. After the initial order, Congress amended the statute at issue, and the plaintiffs moved for a final judgment with an amended definition of the class. The court granted the motion, holding that it had jurisdiction to modify the class because a final judgment had not been entered. *Id.* at 412. The court stated that "this court retains the authority to amend or redefine the class should events in the course of litigation require it." *Id.* Neither *Phan* nor any of the cases cited by the court in *Phan* support Yoder's argument that a class can be amended after the final judgment has been

11

both entered and affirmed.[2]

Likewise, in *Kilgo v. Bowman Transportation, Inc.*, 789 F. 2d 859, 877-78 (11th Cir. 1986), the court observed that Rule 23(c)(1) grants the trial court broad discretion in the amendment of a class, but that the expansion of a class after trial should be viewed with caution. The Court of Appeals affirmed a decision by the district court after trial to expand the class initially certified to conform with the proof at trial. *Id.* at 878. The class was not expanded after the final judgment had been made.

Thus, while Rule 23 has been construed to permit the court flexibility in redefining the plaintiff class before a final judgment, there is no authority that supports amending the certified class twenty years after the final judgment to add a different group of plaintiffs.

Expanding the scope of the 1981 Order.

Even assuming, *arguendo*, that the flexibility of Rule 23 would permit an amendment of the class at this late date, the issue remains whether Yoder has established that the members of the proposed expanded class are entitled to the entry of an injunction to enforce a right to outdoor activity. Yoder argues that the Department, by its policy, tacitly acknowledges the right of all the residents of Chester to the same outdoor exercise as the persons who are members of the class under the 1981 Order, and that expanding the class would simply provide a way to enforce that right without "needlessly relitigating the issue." (Pl.'s Resp. Supp. at 4.)

---

[2] In the cases cited in *Phan* the courts express the general principle that the certification of a class should be approached with liberality because of the ability of the court to modify the class as the lawsuit develops, summarized by the court in *Contract Buyers League v. F&F Investment*, 48 F.R.D. 7, 14 (N.D. Ill. 1969)(Will, J.), as "the principle. . .that the earlier the stage of the proceeding, the more liberally should the court construe the applicability of Rule 23."

12

Even if Yoder is correct that, were the issue litigated, the result would be a holding that restricting outdoor access of civilly committed persons without the exercise of professional judgment is a violation of due process, the exercise of the court's power to issue an injunction requires a finding, *inter alia*, that the plaintiff is threatened with some injury for which he has no adequate legal remedy. 11A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure: Civil 2nd* § 2942 at 44 (1995). The Department denies that the restrictions imposed on Yoder's outdoor recreation violated its policy or Yoder's rights. But even assuming, again *arguendo*, that the trier of fact would find that Yoder was not accorded the process required by Chester's policy, that alone would not be a sufficient basis for injunctive relief. Where an injunction is sought, an essential part of the "case or controversy" requirement is the necessity of showing not only the past exposure to illegal conduct, but a continuing, adverse effect. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 109 (1998), quoting prior authority. Yoder's motion alleges that for fourteen months in the past he was denied outdoor exercise without professional judgment, but it fails even to allege a basis on which the court could find a need for injunctive relief to correct a continuing violation. The court cannot assume that the facts that led to issuing an injunction twenty years ago still exist for the expanded class.

That requirement to show a need for injunctive relief exists, in part, because of the dramatic consequences of an injunction. The Seventh Circuit recently commented on the impact of an injunction to enforce constitutional rights.

> The effect of these provisions is to add the threat of civil and criminal contempt to the usual sanctions for infringing civil rights.... These are substantial enhancements of the ordinary deterrent effect of constitutional law.... They annex swift and severe sanctions to the ordinary tort remedies (mainly 42 U.S.C. § 1983) for violations of

13

that law.

*Alliance to End Repression v. City of Chicago*, 237 F.3d 799, 800 (7th Cir. 2001). Before the 1981 Order could be amended to permit an expanded group of plaintiffs to benefit from and enforce the 1981 Order, or a similar order entered in a separate case, including the threat of civil and criminal contempt, the Department is entitled to a fully developed record and a determination that such an order is necessary and appropriate.

One example of the issues that the court would have to consider before entering the order requested by Yoder is the question of the precise definition of the expanded class, and whether the terms of the 1981 Order are appropriate for each of groups of persons that would be included. Yoder has proposed an expanded class of all residents of Chester. However, as previously discussed, Yoder's motion alleges that the Department has discretion to determine who is housed at Chester and has chosen to house the three categories of persons described above. Yoder's motion treats "all residents of Chester" and "civilly committed persons" as interchangeable and apparently assumes that there are no relevant factual distinctions that could be made in the process appropriate to the different groups. The court cannot make that assumption the basis of an order. The court cannot assume that there are no factual issues that might be raised regarding the circumstances in which the Department can be required to provide each of those groups of persons with outdoor recreation. *See, e.g., C.J.*, 693 N.E. 2d at 1209, 1213 (the admission, care, and treatment of persons found not guilty by reason of insanity is generally pursuant to the Illinois Mental Health Code, but if there is a conflict, the Illinois Code of Corrections governs).

In summary, Yoder's motion to amend the class seeks to shortcut the process of bringing an

action on behalf of himself and others similarly situated by requesting the extraordinary device of an amendment to a 1981 Order. However, that motion ignores the requirements of proving the factual and legal basis for an injunction that are essential before the court imposes on the defendant the burden of complying with an order. The appropriate course is a separate lawsuit, brought on behalf of an appropriately defined class, in which the factual and legal record that is the necessary predicate to the entry of an injunction can be made.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Yoder's Motion to Amend Class be DENIED.

Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

**ENTER:**

**Geraldine Soat Brown**
**United States Magistrate Judge**

**Dated: January 14, 2002**